IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY DOCKERY,<br><br>            Petitioner,<br><br>v.<br><br>NANCY GIROUX, et al.,<br><br>            Respondents. | CIVIL ACTION<br>NO. 14-6636 |

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 27, 2017**

### I.　INTRODUCTION

Before the Court is Ricky Dockery's ("Petitioner") pro se Petition for a Writ of Habeas Corpus. On November 18, 2014, Petitioner filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)

On February 13, 2017, Magistrate Judge Henry S. Perkin issued a Report and Recommendation ("R&R") recommending that the Petition be denied. (Doc. No. 28 at 35.) On March 3, 2017, Petitioner filed Objections to the Magistrate Judge's Report and Recommendation. (Doc. No. 30.) The Court has reviewed this case de novo, including Petitioner's Objections, and for reasons that follow, the Court will adopt Magistrate Judge Henry S. Perkin's Report and Recommendation to deny the Petition.

### II.　BACKGROUND

#### A.　Facts

The facts in this case are taken from the Report and Recommendation of United States Magistrate Judge Henry S. Perkin (Doc. No. 28.) and are as follows:

1

On direct appeal, the Pennsylvania Superior Court summarized the facts of this case as follows:

> On the night of April 6, 2005, at approximately 10:50 p.m., Allan [sic] Johnson was shot and killed outside 1933 South 18th Street, Philadelphia[.] Ten minutes earlier, Johnson had been walking up the 1900 block of South 18th Street towards Mifflin Street, when he stopped to talk to Aziza Sidberry, a friend from the neighborhood[.] Johnson was leaning up against a van as he spoke with Sidberry.
>
> About ten minutes into the conversation, [Appellant] rode up on a black and gray mountain bike in between the vehicle that Johnson was leaning on and the car in front of him. [Appellant] then pulled out a silver .9[sic] millimeter handgun and fired three shots at Johnson. Johnson was hit in the neck and the chest, and later died. Sidberry watched [Appellant] ride off on the bike towards Mifflin Street.
>
> Dr. Bennett Preston, Assistant Medical Examiner of the City of Philadelphia, conducted an autopsy on the decedent's body which revealed that the decedent had been hit once in the left neck and once in the left chest. Dr. Preston, who removed ballistic evidence from the decedent's body, also determined that the cause of death was multiple gunshot wounds and the manner of death was a homicide.
>
> Officer Joseph Cosgrove found three fired cartridge cases from a .9 millimeter handgun next to the decedent. Police Officer Kenneth James Lay of the Philadelphia Firearms Identification Unit examined the ballistic evidence recovered from the crime scene. Officer Lay determined that all three fired cartridge cases were .9 millimeter Luger, manufactured by Remington, and they were all fired from the same firearm.
>
> Mr. Lay also examined the ballistic evidence recovered from the decedent's body, and determined that the two bullets that hit Johnson were fired from the same gun, and were consistent with .9 millimeter fired projectiles.
>
> After a defense motion in limine, the Court allowed the introduction of 25 .9 millimeter bullets recovered from a magazine of an UZI [sic] recovered from defendant's resident pursuant to the execution of a search warrant. In the magazine, Detective Steven Mostovyk found 25 rounds of .9 millimeter semiautomatic ammunition, 20 of which were Remington manufacture. The

> magazine that the ammunition was found in was not from the murder weapon.

Commonwealth v. Dockery, 1434 EDA 2007 (Pa. Super. July 28, 2008), pp. 2-3 (quoting Trial Ct. Op., July 25, 2007, pp. 2-3); Resp., Ex. A at 1-3. Respondents note that:

> [n]either the gun nor the magazine were admitted as evidence. On the first day of trial, Petitioner made a motion in limine and told the trial court that the Commonwealth "[w]ishes to [ ] introduce into evidence the magazine." (N.T. 5/16/07, 5.) The prosecutor explained that 20 of the rounds in the magazine were the "same caliber, same manufacturer" as the fired cartridges at the crime scene, and that all 25 rounds were capable of being fired from a wide variety of handguns (Id., 8-10). The trial court properly ruled that the ammunition was admissible (Id., 10).
>
> In accordance with that ruling, a police officer who had participated in the search of Petitioner's house testified that police had not found the murder weapon. (N.T. 5/17/07, 250.) He stated that police found 25 .9 millimeter bullets in a magazine, and specified that the magazine, was not the murder weapon. The expert further testified that .9 millimeter bullets fit many types of .9 millimeter guns, and that it is easy to remove bullets from one gun and use them in a different gun.

Resp., p. 3 n.1.

(Doc. No. 28 at 1-2.)

### B. Procedural History

A jury trial was held before the Honorable Jeffery P. Minehart in the Court of Common Pleas, Philadelphia County. At the conclusion of that trial, the jury convicted Petitioner of one count of first-degree murder and one of count possessing an instrument of crime ("PIC"). (Doc. No. 28 at 1.) Following the conviction, Petitioner was sentenced to a mandatory sentence of life without parole for the murder conviction and a concurrent sentence of two and one-half years incarceration on the PIC conviction. (Id.) Next, Petitioner filed a timely notice of appeal to the Superior Court of Pennsylvania. On July 18, 2007, Judge Minehart issued his decision for the

benefit of the appellate court. (Id. at 2). Judge Minehart's decision was filed on July 25, 2007. (Id. at 2-3, citing Commonwealth v. Dockery, Phila. CCP July 25, 2007 (No. CP 0507-0311 1/1).) On July 28, 2008, the Pennsylvania Superior Court affirmed the judgment of sentence. (Id. at 3, citing Commonwealth v. Dockery, 959 A.2d 961 (Pa. Super. 2008) (No. 1434 EDA 2007) (unpub. mem.); Resp., Ex.A.).) On December 3, 2008, the Pennsylvania Supreme Court denied Petitioners' request for an allowance of appeal. (Id., citing Commonwealth v. Dockery, 454 EAL 2008, 962 A.2d 1195 (Pa. 2008).)

On October 26, 2009, Petitioner filed a pro se PCRA petition. (Id.) On January 15, 2010, counsel was appointed for Petitioner. On December 30, 2010, pursuant to Commonwealth v. Finley, PCRA counsel filed a no-merit letter.[1] 550 A.2d (Pa. Super. Ct. 1988). He was replaced by new counsel who again filed a no-merit letter. The PCRA Court issued a notice pursuant to Pa. R. Crim. P. 907 stating that the Petition would be dismissed without a hearing. (Id.) Petitioner filed pro se objections to this Notice. (Id.) Counsel filed a supplemental Finley letter addressing these objections. (Id.) On May 8, 2013, the PCRA Court dismissed the Petition by Order. (Id.) Petitioner appealed and the PCRA Court issued its decision for the benefit of the appellate court on July 23, 2013. (Id.) On April 15, 2014, the Pennsylvania Superior Court affirmed the PCRA Court's dismissal of the Petition. (Id., citing Commonwealth v. Dockery, 102 A.3d 541 (Pa. Super. 2013) (table, No. 1454 EDA 2013); Resp., Ex. B.) On October 6, 2014, the Pennsylvania Supreme Court denied the Petition for allowance of appeal. (Id., citing Commonwealth v. Dockery, No. 296 EAL 2014.)

---

[1] In Commonwealth v. Finley, a prisoner filed a pro se petition for post-conviction relief. 550 A.2d 213 (Pa. Super. Ct. 1988). He was appointed counsel who filed a "no merit letter" with the court. The Superior Court of Pennsylvania found that the appointed counsel's "no-merit letter" coupled with the court's independent review of evidence in light of the pro se post-conviction requests for relief comported with prisoner's entitlement to effective counsel.

4

Thereafter, Petitioner filed this action. On February 13, 2017, United States Magistrate Judge Henry S. Perkin filed his Report and Recommendation, finding the Petition to be without merit and recommending its dismissal. Petitioner's filed Objections, which are now ripe for consideration.

### III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. Any party may file objections in response to the magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's Report and Recommendation. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter. Salve Regina College v. Russell, 499 U.S. 225, 238

(1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV. ANALYSIS

### a. Petitioner's Objection That There Was Insufficient Evidence to Convict Him is Without Merit

Petitioner objects to Magistrate Judge Perkin's findings about the sufficiency of evidence used at trial to convict him. He claims that eyewitness Aziza Sidberry: 1) was prepared by the prosecution to say certain facts, including that she was told there would be a bike in the courtroom and she would need to identify if it "either looks similar or [if it was] the exact same bike," 2) lacked actual knowledge that Petitioner was the shooter, and 3) was compensated for her testimony in the amount of $6,377.48. (Doc. No. 30 at 6.)

In considering the insufficiency of evidence argument, a petition for writ of habeas corpus must persuade the Court that the evidence, viewed in the light most favorable to the prosecution, could not move a rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979). The ultimate question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law. Id. at 324, n.16. Under the AEDPA, review for sufficiency of evidence requires a determination as to whether the state court disposition was an objectively unreasonable application of Jackson, supra. Williams v. Taylor, 529 U.S. 362, 379-90 (2000). The Petitioner has the burden of showing that the state court's analysis was "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

6

In this case, Magistrate Judge Perkin thoroughly reviewed Petitioner's claim for insufficiency of evidence. He noted that the claims of Petitioner were raised in state court and were found to be without merit. Petitioner argued that Aziza Sidberry's testimony was insufficient because she was prepared by the prosecution to say certain facts, lacked actual knowledge that Petitioner was the shooter, and was compensated for her testimony in the amount of $6,377.48. Magistrate Judge Perkin reviewed these contentions and correctly found that,

> In his Response to the Commonwealth's Response to the Petition, Petitioner challenges the testimony of Aziza Sidberry "the Commonwealth's prepared and compensated sole witness, and not because of the presence of contradictions, but primarily because of it's unreliability. There are a number of factors that would cause one to look upon the testimony of Aziza Sidberry with a jaundiced eye." Pet'r's Resp., p.8. As correctly noted by the Respondents, the determination of witness credibility, the resolution of conflicts in evidence, and the drawing of reasonable inferences from proven facts all fall within the province of the fact finder and are therefore beyond the scope of federal habeas corpus review.

(Doc. No. 28 at 13, citing Herrera v. Collins, 506 U.S. 390, 401 (1993).) Based on the determination "that the evidence adduced at trial was sufficient to support Petitioner's convictions [and] was in no way contrary to, or an unreasonable application of the Jackson standard," this Court agrees with the conclusions made by Magistrate Judge Perkin. (Id. at 13.) As a result, Petitioner's claim for insufficiency of evidence will be denied.

### b. Petitioner's Objection Regarding Prosecutorial Misconduct is Without Merit

Next, Petitioner objects to Magistrate Judge Perkin's finding that Petitioner's conviction should not be overturned because of prosecutorial misconduct. Magistrate Judge Perkin carefully considered Petitioner's allegations and found that they were already considered by the state courts. Magistrate Judge Perkin found that the state court did not unreasonably reject the claims. The claims of prosecutorial misconduct asserted by Petitioner include: 1) the prosecutor referenced inadmissible evidence on two separate occasions during the opening argument which tainted the jury with evidence that would never be made part of the record or did not exist, 2) the

prosecutor improperly attempted to create false evidence over objections, specifically in referencing the recovery of the bicycle recovered from Jahleel Thomas' house, and 3) in closing arguments the prosecutor improperly commented on evidence ruled inadmissible by the trial court and then commented on defense counsel's motive for objecting. (Doc. No. 30 at 10.)

The Court must decide if the prosecutorial misconduct, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Petitioner must show that the conduct was so egregious that it amounted to a denial of due process. Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993). The error must have had a "substantial and injurious effect" on the verdict. Brecht v. Abramson, 507 U.S. 619, 637 (1993).

The state court's decision on the claims of prosecutorial misconduct was thoroughly reviewed by Magistrate Judge Perkin and has been reviewed independently by this Court. Magistrate Judge Perkin found no ground for reversible error considering the applicable law. Likewise, this Court finds that the claims of prosecutorial misconduct do not show any reversible error occurred in this case. (Doc. No. 30 at 22.) As a result, Petitioner's objection to Magistrate Judge Perkin's finding on this issue is without merit.

### c. Petitioner's Objection Relating to Counsel's Deficient Performance is Without Merit

In his third argument, Petitioner objects to Magistrate Judge Perkin's finding that even though a fact witness, Jahleel Thomas, was never contacted by Petitioner's trial counsel or PCRA counsel, the failure to do so did not result in a deficient performance by either counsel. (Doc. No. 30 at 11.) This argument was previously considered by the state court.

8

In order to constitute ineffective assistance of counsel, a petitioner must satisfy the two well-known prongs of Strickland: 1) that counsel's performance was deficient and 2) that counsel's deficient performance caused the petitioner prejudice. Strickland v. Washington, 466 U.S. 668 (1984). When a state court rejects an ineffective assistance of counsel claim, a federal court can grant habeas relief only if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Vega v. Klem, No. Civ. A. 03-5485, 2005 WL 3216738, at *6 (E.D.Pa. Nov. 29, 2005).

Here, Petitioner argues that his trial counsel was ineffective for not contacting and not using Jahleel Thomas as a witness at trial and also that PCRA counsel was ineffective for not pursuing this matter on collateral review.[2] Specifically, Petitioner states that Thomas would have testified "that the bicycle [allegedly used by Petitioner in commission of the crime] never left Thomas' house or possession on the day of the shooting." (Doc. No. 28 at 30.) Petitioner filed an affidavit from Jahleel Thomas which was executed several months after this instant Petition was filed. (Id.) In it, Thomas stated that he was willing to testify, but that he was never contacted or interviewed by Petitioner's counsel. (Id.) In his Report and Recommendation, Magistrate Judge Perkin found:

> Respondents note that Thomas was Petitioner's good friend and subject to possible accomplice liability if he provided the bicycle used in the crime. Thus, he had an obvious motive to lie. Moreover, Petitioner overestimated the importance of the bike, which was only a small part of the evidence against him.
>
> In contrast, Ms. Sidberry immediately told police that she knew the shooter and unwaveringly identified Petitioner as the shooter. She knew Petitioner before the

---

[2] The Court should only consider the claim of ineffective assistance of trial counsel because under 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal of State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

9

> shooting and stood face-to-face with the shooter. (N.T., 5/16/07, pp. 125, 126.) Just after the shooting, she gave police an accurate and detailed description of Petitioner. She also unequivocally identified Petitioner as the shooter at the preliminary hearing and at trial. (Id. at 145, 173.) Ms. Sidberry's account of the shooting was corroborated by the physical evidence at the scene, and by the recovery of .9 millimeter bullets from Petitioner's house like the ones used in the shooting. Given the strong evidence against Petitioner, it is unreasonable that [ ] Thomas's impeachable testimony would have resulted in a different verdict or that trial counsel's decision not to call [ ] Thomas would have been a reasonable trial strategy.

(Doc. No. 28 at 30-31.)

This Court agrees with the assessment of Magistrate Judge Perkin and the state courts. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. Here, pursuing an interview of Jahleel Thomas would not have changed the outcome of the trial or in any way shown deficiency on the part of trial counsel. The same is true for PCRA counsel. Accordingly, Petitioner has failed to offer sufficient evidence to prove a contrary application of federal law as required by 28 U.S.C. § 2254(d)(1) and has failed to meet his burden regarding ineffective assistance of counsel.

## V. CONCLUSION

The Report and Recommendation of Magistrate Judge Perkin dated February 13, 2017, will be approved and adopted and Petitioner's Habeas Petition (Doc. No. 1) will be denied. (Doc. No. 28.) A Certificate of Appealability will not be issued based on the analysis contained in the Magistrate Judge Perkin's Report and Recommendation, as approved and adopted by this Court, that a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Writ of Habeas Corpus. An appropriate Order follows.